THE INDUSTRIAL AND GENERAL TRUST, LIMITED, Appellant, *v.* J. KENNEDY TOD and JAMES G. LEIPER, Respondents, Impleaded with Another.

LAWYERS' SURETY COMPANY OF NEW YORK, Respondent.

*Surety company — it is subject to the Insurance Law prohibiting the assumption of a risk exceeding ten per cent of its capital and surplus — collaterals taken by the company are to be deducted in determining the amount of a risk.*

A surety company is not exempt from section 24 of the Insurance Law (Laws of 1892, chap. 690), limiting the amount of any one risk which may be assumed by the company to " ten per cent of its capital and surplus."

Section 24 has not been rendered inapplicable to such companies by chapter 720 of the Laws of 1893, as amended by chapter 178 of the Laws of 1895.

In determining whether a surety company in executing an undertaking has exposed itself to a loss exceeding " ten per cent of its capital and surplus," the value of collaterals taken by the company to secure itself from loss upon the undertaking should, it seems, be deducted from the amount.

APPEAL by the plaintiff, The Industrial and General Trust, Limited, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 12th day of July, 1900, overruling the plaintiff's exceptions to the sufficiency of the Lawyers' Surety Company of New York as surety on the undertaking on appeal given by the defendants and approving such undertaking.

*Samuel Untermyer,* for the appellant.

*Carlisle Norwood,* for the respondents.

McLAUGHLIN, J.:

The plaintiff recovered a judgment against the defendants Tod and Leiper for $377,476.65, and desiring to stay its enforcement pending an appeal to the Court of Appeals they gave an undertaking in the sum of $450,000 with the defendant, the Lawyers' Surety Company, as sole surety.

The plaintiff excepted to the sufficiency of the surety " upon the ground that the said Lawyers' Surety Company, being an insurance corporation, has exceeded its power as prescribed by law in assuming to execute an undertaking in a sum which exposes said surety company to a loss on one risk or hazard exceeding ten per cent of its capital and surplus."

Notice of justification of the surety was thereafter served in the manner provided by the Code, and on an examination had in pursuance of such notice, it appeared that the capital stock of the surety company is $500,000, and its surplus, $207,000, making the aggregate of its capital stock and surplus, $707,000. It also appeared that the defendants Tod and Leiper had deposited with the surety company, as security against any loss which it might sustain by reason of executing the undertaking as surety, certain collaterals, but it did not appear what the collaterals were, or their value. The exceptions were overruled, and the undertaking approved, and the plaintiff has appealed.

We are of the opinion that the order appealed from must be reversed. The defendant surety company comes within the provisions of section 24 of the General Insurance Law (Laws of 1892, chap. 690). This section provides that " No domestic insurance

corporation, nor any insurance corporation organized under the laws of any country outside of the United States, doing business in this State, shall expose itself to any loss on any one risk or hazard, to an amount exceeding ten per cent of its capital and surplus. No insurance corporation, incorporated under the laws of any other State of the United States, doing business in this State, shall expose itself to any loss on any one risk or hazard, within this State, to an amount exceeding ten per cent of its capital and surplus. No portion of any such risk or hazard, which shall have been reinsured in a corporation authorized to do insurance business in this State, shall be included in determining the limitation of risk prescribed in this section."

That the defendant surety company does come within the provisions of the General Insurance Law cannot be seriously questioned. It is conceded that it was incorporated either under this law, or one precisely like, and which was superseded by it. The act is divided into various articles, the first of which contains section 24 just quoted, and is entitled "General Provisions," and which applies to the whole act. The second is entitled "Life, Health and Casualty Insurance Corporations," and section 70, the first section of the article, provides, among other things, that certain persons may become a corporation for the purpose of making any of the following kinds of insurance: "4. Guaranteeing the fidelity of persons holding places of public or private trust. Guaranteeing the performance of contracts, other than insurance policies, and executing or guaranteeing bonds and undertakings required or permitted in all actions or proceedings, or by law allowed."

But it is urged by the respondents that section 24, if it ever were applicable to the defendant surety company, has been rendered inapplicable by chapter 720, Laws of 1893, as amended by chapter 178 of the Laws of 1895. This is not so. A reference to these chapters will show that the Legislature did not intend to exempt surety companies from the provisions of section 24 of the General Insurance Law. The manifest object and purpose sought to be accomplished by the act of 1893, as amended by the act of 1895, is to permit a corporate bond to be substituted for an individual bond whenever the execution of a bond is required by one or more sure-

ties, and also to make the execution of such bond or undertaking by a surety company alone a compliance with any law or regulation directing the execution of a bond by one or more sureties, as well as to render such corporate bond a compliance with the requirements of the statute that sureties shall be residents, or householders or freeholders possessing other qualifications. There is an entire absence of anything to indicate that the Legislature intended to exempt surety companies from the "general provisions" of the Insurance Law, and especially from section 24. These statutes do not, in terms, repeal or modify section 24, so that it must be held that they do not in terms repeal or modify the provisions of the Insurance Law relating to the amount of risk to be assumed by a surety company, nor are they repugnant in any respect to such provisions. Section 24 of the General Insurance Law, therefore, so far as surety companies are concerned, remains in force and effect, and its meaning is clear. It prohibits the companies and corporations therein specified from exposing themselves to a loss upon any one risk or hazard to an amount exceeding ten per cent of their capital stock and surplus, and if they do expose themselves to a loss in excess of that amount, their act would, undoubtedly, be *ultra vires.* (*Nassau Bank* v. *Jones*, 95 N. Y. 115; *Pratt* v. *Short*, 79 id. 437; *Crocker* v. *Whitney*, 71 id. 161.)

But can it be said that the defendant surety company has violated this section in executing the undertaking in question, or that it has exposed "itself to any loss on any one risk or hazard to an amount exceeding ten per cent of its capital and surplus?" The amount of loss to which it is exposed by virtue of its acting as surety is not necessarily measured by the amount of liability specified upon the face of the undertaking. It is undisputed that it has taken from Tod and Leiper collaterals to indemnify it against any loss which it may sustain. If the value of these collaterals is sufficient to fully indemnify it, then how can it be said that it has exposed itself to any loss whatever? Manifestly it cannot. Certainly the hazard or risk to which it has exposed itself is reduced to the extent of the value of the collaterals which have been transferred to and are now held by it. But the learned justice sitting at Special Term neither determined what the collaterals were nor their value. It is impossible, therefore, for this court to ascertain, from the record before

us, whether the surety company has exposed itself to a loss by executing the undertaking in question, exceeding ten per cent of its capital and surplus. Before this can be determined it is necessary to ascertain of what the collaterals consist as well as the value of the same. When this is done, and not until then, can that question be determined. For this reason the order appealed from must be reversed, with ten dollars costs and disbursements, and the question remitted to the Special Term to determine the value of the collaterals held by the defendant surety company, and when such value has been ascertained, then to make such order concerning the sufficiency of the surety as the proofs may warrant.

The order appealed from is reversed, with ten dollars costs and disbursements, and the matter remitted to the Special Term as indicated in this opinion.

VAN BRUNT, P. J., RUMSEY, PATTERSON and O'BRIEN, JJ., concurred.

Order reversed, with ten dollars costs and disbursements, and matter remitted to Special Term as indicated in opinion.